**RECEIVED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

MAR 31 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

WILLIAM JOHN WAYNE NELSON

State Convict B13596

GANG AKA "UNCLE ♂ DADDY"

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

KIM MOORE DIGIOVANNI

FRANK MAX VALENTI

HEATHER MARIE PITTMAN

(Enter above the full name of ALL
defendants in this action.  Do not
use "et al.")

17cv2512
**Judge Manish S. Shah**
**Magistrate  Jeffrey T. Gilbert**
**PC 6**

Case _____

(To  be  supplied  by  the  Clerk of this Court)

**CHECK ONE ONLY:**

✓_____    **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
**U.S. Code** (state, county, or municipal defendants)

_____    **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
**28 SECTION 1331 U.S. Code** (federal defendants)

_____    **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR*
*FILING."  FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I. **Plaintiff(s):**

    A. Name: WILLIAM JOHN WAYNE NELSON AKA "BILL NELSON"

    B. List all aliases: BILLY DUKE, STREET BOSS, ANGRY ARYAN, WHITE WRATH, WILLIAM THE CONQUEROR, WILLIAM THE BASTARD, WILD BILL, KAISER BILL, EVIL TWIN,

    C. Prisoner identification number: STATE CONVICT B13596 AKA UNCLE DADDY

    D. Place of present confinement: WESTERN ILLINOIS CORRECTIONAL CENTER

    E. Address: 2500 ROUTE 99 SOUTH MOUNT STERLING, ILLINOIS 62353

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

Atty No. *22390

    A. Defendant: KIM MOORE DIGIOVANNI (630) 807-1000

    Title: ATTORNEY AT FLAW / GUARDIAN AD LITEM *14F387

    Place of Employment: 400 Sq. COUNTY FARM RD. * SUITE 300 WHEATON, IL. 60187

    B. Defendant: FRANK MAX VALENTI (630) 833-4070

    Title: ATTORNEY AT FLAW / STATES ATTORNEY PROXY

    Place of Employment: 101 E. St. CHARLES RD. VILLA PARK, IL. 60181

CONFIDENTIAL INFORMANT No.* "666 RAT BIRD"

    C. Defendant: HEATHER MARIE PITTMAN (630) 854-1606

    Title: HEROIN ADDICTED PROSTITUTE / WEB CAM PORNO STARLET

    Place of Employment: SHE OPERATES FROM APARTMENT LOCATED

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

AT: 1020 E. DIVISION STREET, APT "F" LOMBARD, IL. 60148

2

Revised 9/2007

III.   **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: DON'T RECALL RESTORATION OF GOOD TIME IN LIVINGSTON COUNTY PONTIAC, IL. GET

B.   Approximate date of filing lawsuit: 2007

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: DON'T RECALL AS I'VE BEEN STABBED IN HEAD, SUFFERED NUMEROUS MULTIPLE HEAD TRAUMA, ADD, OCD, PTSD, YOU NAME IT MUCH "SURVIVOR GUILT" & MISS HEATHER SAYS I'M INSTITUTIONALIZED WHATEVER THAT IS?!

D.   List all defendants: WARDENS & IDOC DIRECTOR. BECAUSE OF THEIR CUSTOMS & PRACTICES I'VE AQUIRED MERSA & BATTERED PRISONER SYNDROME.

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): LIVINGSTON COUNTY, PONTIAC, IL.

F.   Name of judge to whom case was assigned: I DON'T RECALL SHE WAS A FEMALE WITH AN ARYAN/GERMANIC NAME LIKE "LUGERHEAD"

G.   Basic claim made: I WAS BEING DISCRIMINATED AGAINST ~~BECAUSE I AM AN AFRICAN-AMERICAN LIKE FORMER PRESIDENT OBAMA I DON'T GOT A LEGIT BIRTH CERTIFICATE AND WAS BORN IN SOWETO TOWNSHIP~~

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): DISMISSED - DID NOT MAKE IT PAST SUMMARY JUDGEMENT

I.   Approximate date of disposition: 2007

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

3

Revised 9/2007

# IV. STATEMENT OF CLAIM

I HAVE A 4 YEAR OLD DAUGHTER OLIVIA GRACE "PITTMAN". SHE WAS BORN DRUG ADDICTED. HER MOTHER HEATHER MARIE PITTMAN **LIED** ON BIRTH CERTIFICATE CLAIMED to **NOT KNOW WHO FATHER IS/WAS**. WHEN I INSISTED ON PATERNITY TEST SUDDENLY SHE RECALLED I WAS THE BABYS DADDY. DNA PROVES I'M DADDY, YEARS LATER. I'M IN PRISON TENTATIVELY UNTIL 10-10-2017 BUT BECAUSE I HAVE NO APPROVED PLACE TO PAROLE TO I'LL BE IN PRISON UNTIL 10-10-~~17~~ 19 WITH A MAX OUT DATE OF ~~10-10-2021~~ OOPS 11-25-20 {SEE ENCLOSED PROOF}.

I HAVE REPEATEDLY REQUESTED THAT THE COURT ALLOW VISITATION AND ORDER/INSTRUCT GUARDIAN AD LITEM KIM DIGIOVANNI to BRING MY DAUGHTER to PRISON FOR MONTHLY VISITATION AND text MESSAGE WEEKLY PHOTOS OF OLIVIA TO MY 70 YEAR OLD VERY ILL DYING MOM. FRANK VALENTI, HEATHERS Atty. ARGUES AGAINST this.

I'M ASKING THIS COURT **OR** A JURY to ORDER THAT VISITATION BEGIN **IMMEDIATELY** WITH MY DAUGHTER & WEEKLY PHOTOS TO MY MOTHER. VISITS TWICE A MONTH.

A THOROUGH INVESTIGATION AND REVIEW OF DuPAGE CO. CASES # 2012P910, # 2012DV000946, # 2013 cf 0158, # 2014 F000357 & # 2014 CF 1063 WILL **EXPOSE** HOW THE MINIONS OF THE STATE HAVE ~~SEVERED~~ NATURAL FATHER/DAUGHTER BOND OF LOVE & RELATIONSHIP. PLEASE HELP ME. MY MOM HAS BEEN MADE A VICTIM 4 OF ALL THE **SCHEMING**.

OVER →

Revised 9/2007

This Court should be made aware that Miss Heather was on Felony probation for Heroin Possession - a probation that I paid to "have arranged"; and allowed by the States Att'ys office & Probation Dep't. to give birth to a Drug Addicted Baby, due to her "connections". Google "John C. Heidelmeir - March 2013 "another" boyfriend"

Additionally Frank Valenti & in all liklihood Miss Heather have spread rumors & lies about me to the effect that all sexual contact between Heather & I was "forced" and "non-consensual" and if that's not bad enough - Rumor has it that my daughter is a "Rape baby" and I'm alleged to have done vile and sickening things to my baby. God damn them!! Amen

Several of Miss Pittmans former paramors are also ex-convicts or currently in prison. Every man she has been "involved" with is characterized as a "boyfriend". Including men picked up in prostitution sweeps with her who do not know her name or she his. May 2011.

If that's not bad enough Miss Pittman, Valenti & States Atty's have spread rumors I'm a member or soldier in the prison gang called the Aryan Brotherhood. Because of Aryan Brotherhood murdering fed prison guards in '84 this causes me problems with the officers. I foolishly tattooed swastikas and "SS" lightning bolts on my neck and chest, arms etc. as a teenager. I'm 50 now. This puts me in untenable kill or be killed situation/position when/if I'm attacked. I have no guarantee I'll leave prison alive. I live in fear every day. Did I do it to meself or did Valenti & his cohorts conspire against me ?!

I want to know my daughter. She's been stolen from me. I ask Themis, take blind fold off & see what's going on in name of justice 04-01-17 Willie Nelson

**V.** **Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. I WANT PHOTOS OF MY DAUGHTER TEXTED TO MY MOTHER WEEKLY. RITA NELSON 847-323-1863 I WOULD RESPECTFULLY ASK THE COURT TO ISSUE AN ORDER THAT MISS DIGIOVANNI BRING MY DAUGHTER TO PRISON TWICE A MONTH UNTIL I AM RELEASED. I WOULD ASK THE COURT TO LOOK AT ALL THE UNDERHANDED PLOTTING AND SCHEMING THAT HAS GONE ON TO PREVENT MY DAUGHTER & I FROM HAVING ANY BONDS, TIES OR RELATIONSHIPS. I'D LIKE TO SEE/HEAR AN APOLOGY FROM LINDT, & JACKSON & SEE THEM CHASTISED ALONG WITH DIGIOVANNI &

**VI.** The plaintiff demands that the case be tried by a jury. ☑ YES ☐ NO VALENTI.

**VII. IF** MY MORE THAN REASONABLE REQUESTS CAN'T BE MET I'LL WANT A JURY TO DECIDE, AND A MONETARY AWARD FOR PAIN AND SUFFERING FOR DAMASES.

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court. APRIL FOOLS DAY.

Signed this **1st** day of **APRIL**, 20 **17**

---

*William John Wayne Nelson*
(Signature of plaintiff or plaintiffs)

WILLIAM JOHN WAYNE NELSON
(Print name)

B13596 AKA "Uncle "E" Daddy"
(I.D. Number) WESTERN ILLINOIS
CORRECTIONAL CENTER
2500 ROUTE 99 SOUTH
(Address) MOUNT STERLING, IL. 62353

Revised 9/2007

In the photo of Olivia with an unkempt untidy ungroomed rats nest hair—Do she's being groomed (no pun intended) to covet "Bling-bling" like a crow. She's also in a tavern. How can I possibly know this?? could it be because in my dormant e-mail account I have a photo of her being held by a convicted registered sex offender named of Robert Romanski in this same tavern?!! Next photo: Is that punk who's lurking behind my daughter in kiddy park fondling my dog—is it Robert Romanski?! Is it one of Heathers numerous "Boy friends"!? Like the non-white sex client on her May 2011 heroin bust was a boy friend?! only in DuPage!! WTF!? HELP!!



I was Miss Heathers "Employee." I was her houseman for her homebased escort date service. She paid me by letting me frequent her vagina—does that make me her ex or a former >Boyfriend<?! I'm a stranger. She has had an out of wedlock child with. Without my knowledge prior to DNA test.

No Report No.#     DuPage County Correctional Center   Also Notice    FORM: SO-00451

Report # DCC_____    Wheaton, Illinois     No Watch C'mdr Signature    REV: 06-15

Incident Report

him to document the information requested by Major Malone. Please find attached the inmate request slip dated 4/11/16, submitted by inmate Nelson. Major Malone also indicated an incident report should also be included. ~~The incident was documented and all the attachments were provided to Major Malone. Major Malone indicated~~ she would send the documentation to the States Attorney's office.

In DuPage County Jail.

All phone calls are recorded!!     the Public Defender Sr Ass't Kristen V. Nevdal, told me during a phone conversation in May 2015 that Ass't States Attorney Bethany Jackson told her: quote, "Olivia is a non-issue, the State does not care about her". Unquote.

These same States Attorneys were aware that prior to #13cf0158 Miss Heather had been violating her sought after & rc'vd Order of Protection - talking to me daily on phone about our daughter & had twice left the State without permission while on felony probation for heroin, to be with me. A probation I paid $5k to "arrange."

These representatives & voice of the People of Illinois also knew that my baby daughter was crawling around on the floor accessing an illegal loaded 9mm pistol, used heroin needles, orange needle caps, dog turds, discarded condoms oozing negro semen, and soiled under-clothing and potentially placing this filth in her mouth, and did nothing about it. *Their agents at DuPage Jail refused to contact DCFS* During 1 sided farcial trial of *14cf1063 Miss Heather was allowed to perjure herself and it's easily proven!! If a picture is worth 1000 words, what's photos worth?! Or recorded phone call?? The State don't & didn't care about conditions of Olivia's birth or fact she frequents methadone clinic - needle exchange etc. Suddenly they care and don't want her visiting me in jail or prison. Yet had I not bought a judge she'd have been born in jail or prison!! Themis take your blindfold off!!

_____    5/5 ___     _____
Signature Watch Commander                        Signature Reporting Officer

* Corporal Nick Johnson & Booking Agent M. Carlson *

* { NOTICE NO REPORT NO# WAS MADE. NO OFFICIAL RECORD
THERE FORE EXISTS. WHY DO YOU THINK THAT IS ?! }

DuPage County Correctional Center
Wheaton, Illinois
Incident Report

FORM: SO-00451
REV: 06-15

Report # DCC_____-_____
Violations

A copy of the incident report was delivered to the inmate
By: _____
Date: _____ Time: _____
A hearing will be held on the alleged violations.

" THE COVER UP IS ALWAYS
WORSE THAN THE CRIME "
EXCEPT IN DuPage COUNTY.
INMATE FILE

☐ Sergeants Office "B" Building        ☐ 0600 – 1800 hours
☐ Multipurpose Room "A" Bldg.          ☐ 1800 – 0600 hours
☐ Detainee's Cell Location
☐ Other ← Write in Location

Date of Report
4/14/2016

Time
12:24

THIS IS THE SAME COUNTY STATES ATTY OFFICE
THAT GAVE US THE ORLANDO CRUZ FIASCO.
WHERE I BOUGHT A JUDGE AND PROSECUTOR FOR
$5 GRAND FOR HEATHER PITTMAN TO ESCAPE JUSTICE

Reporting Officer: Mondelli       Emp.# 880

Nature of Incident
Informational

Location of Incident
1wpod

Date
4/11/16

Time
0800

Persons(s) Involved
Name
Nelson, William

IR #
164004

Booking #

Witness(es)
Name
Major Malone
Lt. Boggs

Emp./Booking #

THIS IS THE SAME JUDICIAL DISTRICT THAT FREQUENTLY WRIST
SLAPS PEDOPHILES & GAVE RANAULDO VELASQUEZ 3 YRS. AT 50%
FOR MURDERING A HIGHWAY WORKER. FACTS NOT FICTION

| C.E.R.T. Team Members | Requested | Yes | ☐ | No | ☐ |
| | Involved | Yes | ☐ | No | ☐ |

☐ _____ Wristband applied by (if applicable): _____
☐ Copy of request slip to inmate file (if applicable).          ☐ Population boards tagged (if applicable).
Copy:
☐ Supervisors, ☐ MSU, ☐ Psych., ☐ Seg Book, ☐ Rec Room, ☐ Housing Sheet, ☐ Court Coordinator, ☐ R&D, ☐ Social
Services ☐ Chaplain, ☐ Law Library, ☐ Laundry, ☐ Transport, ☐ Visiting, ☐ Kitchen, ☐ Trusty Supervisor, ☐ Contract
Supervisor, ☐ Fire & Safety Ofc., ☐ OPS, ☐ Special Services Manager, ☐ Administrative Assistant, ☐ Work Release, ☐
Separation Coordinator, ☐ SR-22
Narrative: (Describe the incident and what if any action was taken)

On 4/8/16, I was conducting my round when inmate Nelson asked to speak with me. Inmate Nelson indicated he was sent two photographs form Attorney Frank. M. Valenti. The attorney's address is 101 East St. Charles road, Villa Park, Illinois. (630)833-4070 Based on our conversation, the photographs were part of a court order agreement. Inmate Nelson claimed in the background of the photographs Robert Romanski accused sex offender is observed near a park and more importantly near his daughter. I asked Inmate Nelson if he contacted the local jurisdiction to investigate his claim. Inmate Nelson wanted to use the telephone to contact a Lt. Abenante at the Lombard Police Department. Inmate Nelson was advised I would look into his telephone call. In the meantime, Inmate Nelson indicated he would try and have his mom contact the local jurisdiction. At this point, there was nothing in writing by Inmate Nelson. Inmate Nelson was advised to write this information on an inmate request form in order to determine its legitimacy. Inmate Nelson agreed and was happy I was going to follow up with him.

On 4/11/16, during my morning tour I followed up with inmate Nelson. Inmate Nelson indicated that he wrote a complaint to the courts and provided it to Sergeant Vanhoose. Inmate Nelson said he gave the complaint to Sergeant Vanhoose on 4/08/16, Friday night. In following up with Sgt. Vanhoose it was determined he did not accept the complaint. I notified Major Malone who advised me to provide a color copy of the photographs in question. Please find attached a copy of the photographs. I was also advised to confirm the name of the alleged sex offender. I was also asked to determine the location of the incident. I returned to Inmate Nelson and asked

← NO SIGNATURE.

_____
Signature Watch Commander

_____
Signature Reporting Officer



# JUSTICE FOR ALL

HOW THE FORCE
OF THE LAW
HAS PREVAILED
FOR THE WORST OF
AMERICA'S EVILDOERS.

Statement of Fact / Affadavit. April 1st, 2017 HELP!!

THIS COURT SHOULD BE MADE AWARE THAT EVEN THOUGH I HATE DESPISE AND HAVE NO USE FOR MOST OF THE OVERPAID VERMIN WHO CLAIM TO REPRESENT THE MASS OF PEOPLE RESIDING IN THE FAILING, BROKEN, FINANCIALLY & MORALLY BANKRUPT STATE OF ILLINOIS, IF I COULD GET AWAY WITH IT WITHOUT FEAR OF CONSEQUENCES & REPURCUSSIONS -

EVERYONE WHO HAS CONSPIRED AGAINST ME AT THE SATELITE STATES ATTY / PUBLIC DEFENDERS OFFICE - NAMELY CHIEF P.D JEFF YORK SR. ASS'T P.D KRISTEN NEVDAL, JUDGE KINSELLA - STATES ATTORNEY ROBERT BERLIN - HIS BATTALION OF LYING VENAL DEBASED UNETHICAL ASSISSTANTS JACKSON, LINDT, KING & OTHERS WHO'S NAMES AIN'T KNOWN TO ME - WE WOULD TAKE A TRIP TO ASS WHIPPING CITY AND I'D BE LIKE JOSHUA IN THE OLD TESTAMENT. LUCKY FOR THEM WE DON'T LIVE IN A JUST SOCIETY. OTHERWISE IT WOULD BE "SPARE NONE". GOD WILL PUNISH THEM!!

I HOPE SOMEONE WILL LOOK AT THE VAST AMOUNT OF UNTOLD $$ THOUSANDS OF DOLLARS SPENT PERSECUTING ME ON BEHALF OF MISS HEATHER PITTMANS VAGINA AND DEMAND A RECKONING, ACCOUNTABILITY, AND WANT TO KNOW WHY !?

THE ONLY PEOPLE WHO WORK FOR THE GRECO-ROMAN PROSTITUTE - A RELIGIOUS DEITY - THE TITAN "THEMIS" AKA LADY JUSTISE WHO DO NOT DESERVE WRATH IS MISS RUTH WALSTRA PD SP'VSR, MARK LYON & LAST BUT NOT LEAST HIS HONORABLE JUDGE ELSE. ALL OTHERS SHOULD BE SENT TO THEIR MASTER SATAN AND CAST IN THE LAKE OF FIRE FOR ETERNAL TORMENT & DAMNATION, FOR SLANDERING MY NAME & REPUTATION AS A CONVICT, LABELING ME WOMAN RAPER - AND A GODDAMN BABY RAPER - CONSPIRING TO HAVE ME SLAIN.

I BELIEVE MISS WALSTRA & MARK LYON TRIED TO HELP ME AND THAT JUDGE ELSE HAS BEEN VERY FAIR. I JUST RESPECTABLY DISAGREE WITH HIS DECISION TO POSTPONE VISITATION UNTIL AFTER I'M OUT OF PRISON. I MAY NOT LEAVE PRISON ALIVE, IF JACKSON, LINDT, VALENTI & MISS HEATHER HAVE THEIR WAY. THAT WAS THEIR INTENT & PURPOSE WAS IT NOT ?!. MY MOM WILL DIE & NEVER GET TO SEE HER GRAND DAUGHTER - THAT'S THE PLAN . . . . AIN'T IT?! I DID NOT WANT KIM DIGIOVANNI FROM THE GET GO - SIMPLY BECAUSE VALENTI WANTED TO BRING THIS BROAD ON BOARD. I'M AN UNEDUCATED CONVICT AND BEEN BEING TAKEN ADVANTAGE OF. I'M JUST SUPPOSED TO TOLERATE BEING FUCKED SCREWED BECAUSE POLITE LANGUAGE IS BEING USED AS IT TRANSPIRES!? MY DAUGHTERS CHILDHOOD IS BEING STOLEN FROM ME - FOR 4 YRS ALREADY AND MISS HEATHER IS BEING REWARDED FOR LIES & BAD ACTING. SOMEONE SHOULD FIND OUT WHY. I DON'T WANT TO HAVE A SOCIAL MEDIA CONVERSATION IN THE COURT OF PUBLIC OPINION I JUST WANT MY VISITS WITH MY LITTLE GIRL NOW. ANGER BURNS CONVICT OVER →

Nelson

9370

STATE OF ILLINOIS    )
                         ) SS
COUNTY OF DUPAGE   )

### IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
### DU PAGE COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS,   )
            Plaintiff,         )
                         )
    vs.                  )    No.   14 CF 1063 - 03
                         )        (Additional Count)
WILLIAM J. NELSON,        )
          Defendant.       )

14 AUG 19 PM 1:30
FILED

## INDICTMENT

The Grand Jurors chosen, selected, and sworn, in and for the County of DuPage, in the State of Illinois, IN THE NAME AND BY THE AUTHORITY OF THE PEOPLE OF THE STATE OF ILLINOIS, upon their oaths present that on or about the **21st day of November, 2013**, at and within DuPage County, Illinois, **William J. Nelson** committed the offense of **Felony Violation of an Order of Protection** in that

said defendant, having been served with notice of the contents of an order of protection, Number 12OP910, issued on July 12, 2012, by the Circuit Court of DuPage County pursuant to the Illinois Domestic Violence Act, did knowingly commit an act which was prohibited by the order of protection in that said defendant sent a letter to the address of Heather Pittman, the defendant having been previously convicted of the offense of Violation of Order of Protection in DuPage County case number 13CF158,

in violation of **720 ILCS 5/12-3.4(a)(1)(i)** and **720 ILCS 5/12-3.4(d)** and AGAINST THE PEACE AND DIGNITY OF THE SAME PEOPLE OF THE STATE OF ILLINOIS.

LAMENTATIONS 3:35, 36

# STATE OF ILLINOIS
## IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
### COUNTY OF DU PAGE

PEOPLE OF THE STATE OF ILLINOIS )
    PLAINTIFF, )
                    )    CRIMINAL
VS                      )    No.   14 CF 1063
                    )
WILLIAM J. NELSON,      )

## MOTION FOR NEW TRIAL

NOW COMES the Defendant, by his attorney, Jeffrey R. York, DuPage County Public Defender, through Assistant Public Defender Mark A. Lyon, and moves this Honorable Court for a new trial pursuant to 725 ILCS 5/116-1, in support whereof, defendant states:

1. Following a jury trial ending on October 6, 2016, the defendant was found guilty of Violation of Order of Protection.

2. The defense submits that on June 9, 2015, the trial court (then Hon. Brian Telander) erred in denying the defendant's motion, filed November 12, 2014, to dismiss the six-count indictment. The motion alleged that the offense requires proof that a defendant has violated one or more of six possible statutory remedies, and that the instant indictment failed to set forth which remedy was allegedly violated by the defendant's charged conduct.

3. Before trial, the State filed certain motions *in limine* which were granted over defense objection. The defense now submits that it was error to permit introduction of other crimes and/or bad acts of the defendant on issues of the defendant's intent, motive and lack of mistake. The defense submits that the purposes for which the other-crimes evidence was admitted either had no relevance or carried a prejudicial impact outweighing its probative value. The defendant did not argue or present evidence of mistake during the trial, and evidence to show absence of mistake should not have been introduced in the State's case in chief. The defendant's other crimes did not provide a motive for the instant offense. The defendant's intent was either legally irrelevant (as argued by the State at hearings on the motions *in limine*) or was rendered irrelevant when the court rejected a defense jury

instruction which included a mental state ("knowingly") in the issues instruction for the offense. When a defendant's state of mind is not an issue in the case, admission of other-crimes evidence to show intent or lack of mistake is not appropriate. The other-crimes evidence also carried overwhelming prejudice since the other crimes involved acts allegedly harmful to the same complaining witness as in the instant case. The defense recognizes that some of the other crimes/bad acts ruled admissible after hearing on the State's motions *in limine* were not offered at trial, but some (for example, two sentencing orders from previous convictions) were admitted. The defense also submits that it was error to bar the defense from raising an affirmative defense of mistake of law based on legal advice he had received from counsel in a previous case (to the effect that his conduct in the instant case would not violate the law).

4. The defense submits that it was error to deny his Motion for Substitution of Judge for Cause, filed July 19, 2016 and heard and denied by Hon. Daniel Guerin on July 29, 2016. The defense recognizes that a defendant who agrees to a conference after being admonished pursuant to Supreme Court Rule 402 gives up his right to substitute judges because of matters learned by the conferring judge. Nevertheless, where, as it is argued here, it appears that the conferring judge has developed a fixed position concerning issues and defenses in the case, denial of substitution is error.

5. The defense submits that it was error to refuse the defendant's issues instruction containing, as a proposition to be proven, that the defendant "knowingly" made contact with Heather Pittman. The State's instruction, given by the court, failed to include any mental state accompanying the defendant's alleged conduct. The indictment counts charged that the defendant "did knowingly commit an act which was prohibited by the order of protection...." The issues instruction should have included a mental state within the propositions to be proved.

2

6. The defense submits that it was error to deny admission of Defense Exhibits 1, 2 and 3. Defendants 1 is a photograph of the defendant and Heather Pittman holding their infant child between them, with each parent simultaneously kissing the child on the child's opposite cheeks. Defendant's Exhibits 2 and 3 are photographs, taken by and/or in the presence of Heather Pittman, showing the defendant holding their child. These photographs were offered to impeach Heather Pittman's claim that she was fearful of the defendant on the occasion where the photographs were taken. The photographs showed that Pittman appeared completely at ease in meeting with the defendant, and was not reluctant to entrust her infant child to his care.

7. The defense submits that the evidence presented by the State failed to establish the defendant's guilt beyond reasonable doubt.

WHEREFORE, the defendant respectfully requests that the findings of guilty be vacated, and that a new trial be ordered or a judgment of not guilty as to each count be entered herein.

Respectfully submitted,

MARK A. LYON
ATTY. NO. 100148
OFFICE OF THE PUBLIC DEFENDER
503 North County Farm Road
Wheaton, Illinois 60187
(630) 407-8300
Mark.lyon@dupageco.org

Mark A. Lyon
Assistant Public Defender

January 17, 2017

TO:        Nelson        B13596        4-D-17

FROM:      A. Cross
           Field Services

SUBJECT: .    Response to Resident Request .

Because of your conviction for Violation of an Order of Protection, you are mandated to be on GPS while on parole. Because of this, you are not eligible for a halfway house or shelter. You need to submit the addresses of friends or family that can be considered for placement. If you cannot provide an address that can be approved, you will be violated at the door on your out date. You will have to remain in our custody until you provide an address that can be approved or until you have done half of your four years of parole.

R-18

# SENTENCE CALCULATION WORK SHEET

### CONSECUTIVE SENTENCE - DETERMINATE/MISDEMEANOR TO DETERMINATE/MISDEMEANOR/PRISONER REVIEW BOARD OPT DATES

NAME _Nelson, William_ NUMBER _B13596_ DATE _1-12-17_

### (STEP 1)

YR.   MO.   DAY

6          _14CF 1063_ (1st Sentence)

+      3     _16 CC48_ (Consecutive Sentence)

+ _____ (Consecutive Sentence)

6     3     (Total Aggregated Sentence)

### (STEP 2)

YR.   MO.   DAY

14    8'    25    (Custody Date or P.R.B. Projected Out Date)

+   3    1    15    (Agg. Sent. less G.C.C. or CS less G.C.C.)

17   10   10    (Projected Out Date)

+ or - _____ (Previous time lost or awarded)

17   10   10    (Adjusted Projected Out Date)

### (STEP 3)

YR.   MO.   DAY

14    8    25    (Custody or P.R.B. Mandatory Release Date)

+   6    3    (Agg. Sentence or C.S.)

20   11   25    (Mandatory Out Date)

+ or - _____ (Previous time lost)

20   11   25    (Adjusted Mandatory Out Date)

---

ADJUSTED PROJ. OUT DATE _10-10-17_   TERMINAL OPERATOR _____
MANDATORY OUT DATE _11-25-20_   DATE ENTERED _1-12-17_
CALCULATED BY _llc_

DCA 1372
IL 426-5116

October 26, 2016

Honorable John J. Kinsella, Circuit Judge
The County of DuPage
421 N. County Farm Road
Wheaton, IL 60187

RE: William JW Nelson
Inmate #: 00164004

Dear Judge Kinsella:

We are writing to ask you to consider leniency in the sentencing of the above-named
DuPage County Jail inmate.

We have known William Nelson approximately 25 years beginning with his employment
at East Iowa Decks, Inc. Most recently he was released to our custody as a parolee
from the Illinois Department of Corrections in February, 2011 and he stayed with us until
the end of May, 2011. We remained in close contact with him after he left our home and
met Heather Pittman with whom he lived, and subsequently became estranged from.
Because of our relationship with both of them, I, James Naso, was the person Heather
Pittman called in June, 2012 during an argument she was having with Mr. Nelson. I
suggested she get an order of protection against him, not because I feared that he
would harm her. It was because it was clear to me that the relationship was not a
healthy one. From the first time we met Heather Pittman she stated that she wanted to
have a baby because "her biological clock was ticking." She stated that she was willing
to do almost anything so that she could have a child.

We understand William's past history, the family situation that he is from and his street
persona. However, while living in our home, we discovered that inside that rough and
tough exterior there exists a man with a soft and gentle heart which does not often show
itself. Bill Nelson is many things, but he is not a rapist or a child molester. Please
consider what we've told you in this letter when you make your determination of
sentencing for him.

Respectfully,

*James L Naso and Betty L. Vitale*

James L. Naso and Betty Vitale

711 Redden Court
Saint Charles, Il. 60174
(630) 461-0030

1    MS. LINDT:  I think, we have July 19th, Your

2    Honor.

3        THE COURT:  All right.

4        THE DEFENDANT:  Your Honor?

5        THE COURT:  Yes, sir.

6        THE DEFENDANT:  Two things, real briefly,

7    Mr. Lyons can't help me with because he's not assigned

8    to this.

9            One, back to the issue we spoke about last

10   week with my daughter in the park --

11       MS. LINDT:  Your Honor, I object.

12       THE DEFENDANT:  -- with the pedophile, the

13   registered sex offender.

14       THE COURT:  All right.  Hold on.

15       THE DEFENDANT:  I would like some information as

16   to what's going on.  She doesn't want to tell me

17   anything.

18           I want to know that this is actually being

19   investigated.

20           I'm supposed to take the woman's who is trying

21   to send me to prison, where I'm probably going to get

22   murdered, her word that that --

23       THE COURT:  You are asking me to do something

24   about your concerns about the welfare of this child?

1    THE DEFENDANT:  I want to know that the police are

2    actively investigating this.

3         I don't want to just take -- go on her say

4    so.  Who is she?

5         She lies to me all of the time -- or lies

6    about me.

7    THE COURT:  I understand your motivations and your

8    concern and why you would be concerned; but that's not

9    an issue that's before me.

10         I'm not -- it would be inappropriate for me

11   to contact anyone about you or about this case.  It

12   would be an ex parte communication.

13         You've advised the State.  If you think there

14   is other law enforcement agents that should be made

15   aware of it or DCFS, then you should do that; but

16   that's not -- that's not something for me to do.

17   THE DEFENDANT:  Okay.  Then the second issue is,

18   is I don't know if this is information being fed to

19   this individual from the State's Attorneys, who seem to

20   have a vested interest to try to send me to prison,

21   since we have been going through this for almost two

22   years now; but there is an individual over at the

23   jail -- or he was, named David Kapas; and he was put

24   into a cell, and my daughter's name appeared all over

1     the cell, linked with pedophile statements.

2          My name is plastered all over the cell. The

3     guys over there are on their cell phones all day,

4     asleep at the switch; but they are paid and trained

5     observers and supposed to be watching us, all right;

6     and it was brought to the chief's attention.

7          Her story is that she doesn't know who did

8     it; but if I go over there and slam Jenny Lindt's name

9     all over the place or Miss Jackson's, just to

10    personalize this, coupled with the statements that are

11    said about me and my daughter, I'll be back here in

12    court.

13         So I'm asking you to call over there to the

14    jail and tell the people to paint those obscenities out

15    and remove that stuff.

16     THE COURT: All right. Well, you should -- if you

17    have a complaint about the jail, what's going on in the

18    jail, or what has been done -- what you just described,

19    you have got to bring that to the jail's attention.

20     THE DEFENDANT: The buck stops with the chief, and

21    she hasn't done anything about it.

22     THE COURT: You have got to understand what my

23    role here is, and your attorney will advise you that

24    the one thing that I can't do is communicate with other

1   people about you and about this case; that's one of the

2   basic precepts of being a judge in a case is to not

3   immerse yourself in what's going on with the

4   individuals on irrelevant issues.

5        What we do -- or what I do on this case has

6   to be done here in court, on the record, and that's it;

7   and that's why I don't want to get letters, and I don't

8   want to make phone calls.

9        I mean, it compromises what I'm doing.

10       Now, all of a sudden, I'm going to call

11   somebody to talk to them about you and what you are

12   doing or what's been done to you or where --

13   THE DEFENDANT:  That's what they've been doing all

14   along.

15   THE COURT:  They are not the judge in the case.

16   They are playing a different part here.

17        They are advocates for their case, and they,

18   hopefully, will act in accordance with the rules

19   applicable to them, which are different than the rules

20   that are applicable to the judge.

21   THE DEFENDANT:  Right, because they do what they

22   want.  They are protected by qualified immunity.  I got

23   that.

24   THE COURT:  I didn't say they can do what they

1    want, but --

2        THE DEFENDANT:  Well, obviously they can.  I

3    mean --

4        THE COURT:  Some of the points should legitimately

5    be raised, but they are not to be raised with me.

6    There is not anything I can do about them; and if I did

7    do them, I would be compromising my ability to stay on

8    the case, and that's not right, either.

9        THE DEFENDANT:  Okay.  Maybe Miss Lindt will call

10    over there, since she is so concerned about Olivia, and

11    get Olivia's name removed --

12        THE COURT:  Whoa, whoa, whoa --

13        THE DEFENDANT:  -- and the obscenities attached.

14        THE COURT:  Here's a rule that we're always going

15    to play by, in this case and every other case, everyone

16    that appears before me only addresses me;

17    understand?

18        THE DEFENDANT:  10/4.  I hear you loud and clear.

19        THE COURT:  I wouldn't let him talk to her or her

20    to talk to him, that --

21           Not on the record, we're not going to do

22    that.

23        THE DEFENDANT:  Okay.  Well, when she was putting

24    on her performance last week, she was naming me; and I

1    felt it was directed at me.  I don't know, you know,

2    what was going on there.

3        THE COURT:  She is directing -- she's prosecuting

4    you for crimes; that's to be expected.

5        THE DEFENDANT:  Alleged crimes.

6        THE COURT:  Well, she is -- she's prosecuting you

7    for those crimes.  Whether you committed them is a

8    different question.

9        THE DEFENDANT:  You know, I was acting on Chief

10   Public Defender York and Ms. Nevdal's legal counsel,

11   who both told me that this Order of Protection did not

12   supersede my parental rights, especially since Olivia

13   wasn't named in it.

14       THE COURT:  Okay.  All right.  Thank you.

15                    (Which were all of the proceedings had

16                     in the above-entitled matter.)

17

18

19

20

21

22

23

24

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT

DU PAGE COUNTY, ILLINOIS



CHERYL ANN BARONE, do hereby certify that the foregoing Report of Proceedings, consisting of Pages 1 to 55, inclusive, was reported in shorthand by me, and the said Report of Proceedings is a true, correct and complete transcript of my shorthand notes so taken at the time and place hereinabove set forth.

Official Court Reporter
Eighteenth Judicial Circuit of Illinois
DuPage County
C.S.R. License No. 084-001503

```
 1          IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
                    DU PAGE COUNTY, ILLINOIS
 2

 3
        THE PEOPLE OF THE           )
 4      STATE OF ILLINOIS,          )
                                    )
 5           Plaintiff,             )
                                    )
 6              -vs-                )      No. 14 CF 1063
                                    )
 7      WILLIAM NELSON,             )
                                    )
 8           Defendant.            )

 9

10

11                  REPORT OF PROCEEDINGS had at the

12      hearing of the above-entitled cause, before the

13      HONORABLE JOHN J. KINSELLA, Judge of said court, on the

14      8th day of December, 2015.

15      PRESENT:

16           MR. ROBERT B. BERLIN,
             State's Attorney of DuPage County, by
17                MS. BETHANY JACKSON,
                  Assistant State's Attorney,
18
                  appeared on behalf of The People of the
19                State of Illinois;

20           MR. MARK LYON,

21                appeared on behalf of WILLIAM NELSON,
                  Defendant.
22

23      Cheryl Ann Barone, CSR
        Official Court Reporter
24      CSR 084-001503
```

1       THE CLERK:  William Nelson.

2       MS. JACKSON:  People.

3       THE COURT:  Good morning, everyone.

4       THE DEFENDANT:  Good morning, Judge.

5       MS. JACKSON:  Bethany Jackson, for the People.

6       MR. LYON:  Mark Lyon, for Mr. Nelson.

7       THE COURT:  All right.  The Court is in receipt of

8  a report dated November 7th, from Dr. Murray, pursuant

9  to the Court's finding -- or raising a bona fide doubt

10  as to fitness.

11       Both sides have obtained copies of the

12  report?

13       MS. JACKSON:  Yes, Your Honor.

14       MR. LYON:  Yes, Judge.

15       THE COURT:  And I'm sure both of you have noted

16  that the doctor's opinion is the defendant is, in fact,

17  fit.  I believe, however, we still must have a hearing.

18       MR. LYON:  That's what I wasn't sure of, Judge.

19       If we are to have one, I'm prepared to

20  stipulate to the testimony of the report right now, if

21  that's --

22       THE COURT:  I think my recollection -- I'll be

23  honest with you, normally, when I've ordered these,

24  more often than not, they come back as unfit, and we

1    proceed in that fashion; but I believe once there has

2    been a bona fide doubt, it necessitates a hearing, even

3    if the issues are not largely disputed; so do both of

4    you agree with that?

5              I can pull out my code and look again.

6         MS. JACKSON:  I would agree with that, Judge, and

7    I would be prepared to stipulate to Dr. Murray's

8    findings this morning, as well.

9         THE COURT:  All right.  The burden is on the State

10   to go forward.

11             Both sides are answering ready then for the

12   fitness hearing?

13        MR. LYON:  Yes, Judge.

14        THE COURT:  And both of you are agreeing to submit

15   in the State's case then, Dr. Murray's five page

16   report, as evidence in the State's case; is that

17   correct?

18        MS. JACKSON:  That is correct.

19        MR. LYON:  That's correct, Judge.

20             We would stipulate that if called to testify,

21   he would testify consistent with the report.

22        THE COURT:  All right.  Does the State have any

23   other evidence to offer?

24        MS. JACKSON:  No, Your Honor.  The State would

1    rest.

2       THE COURT:  Okay.  Counsel, do you wish to offer

3    any evidence on behalf of Mr. Nelson, on the question

4    of fitness?

5       MR. LYON:  No, Judge.

6       THE COURT:  All right.  So you rest, as well?

7       MR. LYON:  Yes.

8       THE COURT:  All right.  The Court considering the

9    report of Dr. Murray, as well as the Court's own

10   observations of Mr. Nelson, find Dr. Murray's report to

11   be consistent with the observations of the Court, that

12   Mr. Nelson certainly engages in conduct which is

13   sometimes difficult to deal with.

14          He doesn't appear to be unaware of these

15   proceedings or the nature of the case or have ability,

16   if he chooses, to assist in his own defense; and if

17   anything, it's more of a matter of his own possible

18   antisocial attitude or behavior, at least in the minds

19   of some.

20          So I'm going to make a finding the defendant

21   is fit, and then we can proceed forward.

22          I know there has been additional letters

23   provided to the Court, written by Mr. Nelson, in spite

24   of my repeated requests that he stop communicating

1 certainly with me, with regards to the case.

2       I'll note that that admonishment, continues,

3 Mr. Nelson.  Understand there's certain rules we live

4 by.  You may not like them or agree with them; but one

5 of them is you don't communicate with the Court in an

6 ex parte fashion, through written correspondence or any

7 other matter.

8       So I'm going to admonish you again to refrain

9 from communicating with the Court.  You should confer

10 with counsel.

11       I believe the last time we left off, he has

12 made a motion to have you removed as his counsel; and I

13 think, I deferred, as I recall, addressing that

14 question until we addressed the fitness; is that

15 correct?

16    MR. LYON:  That is correct, Judge, and I would --

17 if Mr. Nelson is seeking to represent himself or if

18 he's seeking to have me removed and replaced by another

19 counsel or any of those matters, I am prepared to

20 proceed on that question now; or if Mr. Nelson would

21 like some time to talk to me further about it before

22 going forward, I would be happy to get a short date for

23 that.

24    THE COURT:  All right.  Mr. Nelson, let me advise

1    you, you, as the defendant in this criminal case, have

2    an absolute constitutional right to counsel.

3              You, first of all, have a right to a counsel

4    of your own choosing, somebody who is properly

5    accredited to appear in this court, to represent you as

6    your counsel in a trial of this case.  Otherwise, if

7    you are unable to afford counsel, which has previously

8    been determined to be the case, you are entitled to

9    appointment of the public defender.

10             The other option, of course, is to represent

11   yourself.

12             I do caution you that representing yourself

13   is very unwise, in my opinion; and I say that to

14   everyone with whom this question has, you know, been

15   addressed, that I think it's incredibly unproductive

16   for anyone to act as their own attorney.

17             I wouldn't act as my own attorney, if I were

18   charged in a criminal case, even though I am an

19   attorney, because I think it's unwise.

20             Nevertheless, that is an option you have.

21   You have that right.

22             You are determined to be fit, so you can make

23   that choice.

24             Do you wish to proceed on your request for

1   new counsel; or are you requesting to represent

2   yourself?

3   NELSON    ~~MR. LYON~~:  Well, I would like to talk with Mark

4   before we go any further on that; but could I bring up

5   a couple of issues in response to everything you just

6   said, since I am lucid and able to hold an adult

7   conversation?

8           I'm not a lawyer, and I understand it

9   completely.  Only a fool represents himself.

10      THE COURT:  Yes.

11      THE DEFENDANT:  Kind of like a guy tatooing on

12  himself.  It's stupid.  You get a pro to do it.

13          You don't work on your own brakes, if you are

14  not a mechanic.

15      THE COURT:  I never heard that analogy before or

16  considered it, but I guess that's true.  Certainly, it

17  would be challenging.

18      THE DEFENDANT:  Here's my whole position on this.

19  All right.

20          This whole prosecution wouldn't be taking

21  place --

22          I'm not stupid, Judge.  I do a lot of stupid

23  crap.

24          His boss, Chief Public Defender, Mr. York,

1    back in one of these hallways here, told me in October

2    of 2013 -- he came with a handful of letters that were

3    addressed to my daughter, that when I was expressing my

4    concerns that the kid was crawling around an illegal,

5    loaded pistol --

6         THE COURT:  Hold on.

7              I am aware of the fact that you have

8    maintained and perhaps that might be some relevant

9    evidence, that you have been given advice from, I

10   believe, two public defender's, Mr. York, as well as an

11   Assistant Public Defender.

12        THE DEFENDANT:  And I'm being prosecuted for

13   acting on that advice.

14        THE COURT:  That you have been told or your

15   position is that they advised you that you could go

16   ahead and contact your daughter; correct?

17        THE DEFENDANT:  (Nodding head.)

18        THE COURT:  This is an evidentiary question.

19   That's a matter of facts that may or may not be

20   relevant, as part of your defense; and certainly,

21   that's something you need to discuss with Mr. Lyon or

22   whoever represents you; but that's not an issue that we

23   can address in any fashion now, in terms of the court

24   addressing -- there is no preliminary issues to

1  address.

2          That's a question of fact for the trial, it

3  would appear.

4      THE DEFENDANT:  Okay.

5      THE COURT:  That's part of your defense, that

6  you --

7      THE DEFENDANT:  Well, maybe I've seen too many

8  episodes of Law and Order because it's -- you know, or

9  I don't have an unreal -- or I don't have a realistic

10  view of the real world because, you know, something

11  like that, I felt should have been worked out in a back

12  room deal.

13          Then when they came to me with a cop-out, I'm

14  not going to plead guilty to anything pertaining to my

15  daughter, okay; that's Number 1.

16          Number 2 is her colleague told me that actual

17  innocence wasn't a factor.  It was about whether they

18  could obtain a conviction in front of a jury based on

19  my appearance and on my prior background.

20      THE COURT:  Well, I don't know how I can address

21  that.  I don't know how that --

22      THE DEFENDANT:  You know, so I feel like I'm

23  getting sandbagged all the way around.

24          Then when I try to point these things out to

1    Mr. Lyon, his whole -- and I don't even know if I

2    should be discussing this in front of this lady --

3           THE COURT:  You probably shouldn't.

4           THE DEFENDANT:  But they're tearing open all of my

5    mail at the county jail, so you know, what difference

6    does it make?

7           Like I told you before, it's already been

8    predetermined.  You are going to send me to prison.  We

9    just haven't figured out for how long.

10          You know, then when they -- they come at me

11   with a cop-out, but the same deal was last time, that I

12   got an appeal in about this right now.

13          Yeah, I did violate the order of protection.

14   This woman came and left the state twice.

15          I'm talking about the previous conviction,

16   the 2013 CF 0158 conviction.

17          THE COURT:  Let me stop you.

18          On the one hand, I certainly feel comfortable

19   in allowing defendants to say what they feel compelled

20   to say, on the record; however, you must understand the

21   reason in the past and right now I'm advising you not

22   to engage in these exchanges with the Court is it's on

23   the record, and you are saying things which the State

24   can use against you as evidence, when you address the

1    orders of protection and what you did or didn't do.

2         So this is something you should talk to

3    Mr. Lyon --

4         THE DEFENDANT:  He doesn't want to talk to me.

5         THE COURT:  He just said -- he just said, he did

6    want to talk to you.

7         THE DEFENDANT:  In regards to getting rid of him

8    is what we're going to talk about.

9         THE COURT:  If Mr. Lyon is going to represent you

10   or any other attorney, you should discuss these facts

11   with them and prepare your case for trial; but it's not

12   wise to discuss these -- your position or your actions

13   on the record.

14        You are just giving the State evidence that

15   they can use against you, and it's not a smart thing to

16   do.

17        Your attorney can say things on your behalf

18   which can't be used as evidence against you; that's why

19   you want your attorney to speak for you.

20        THE DEFENDANT:  Well, I hope I made it clear, when

21   I said I was violating the order of protection.  It was

22   in regards to the 2013 CF 0158.

23        But moving right along from that, can we

24   address this?

1           Supposedly, according to the lawyer that is

2    representing Heather on the paternity case, pro bono,

3    as a favor for the State's Attorney -- those are the

4    exact words to me -- they are gearing up to hit me with

5    a rape prosecution.

6           Can somebody enlighten me, what's all this

7    about?

8      THE COURT:  I can't address it, and they can only

9    address it if they choose to, and it's not really a

10   proper topic of discussion in this case.

11         Unless and until there's some additional

12   charges, there's no point in us addressing it.  I don't

13   know anything about any of the facts.

14     THE DEFENDANT:  Well, I didn't know anything about

15   it either until the lawyer that they obtained for

16   Heather brought it up.

17     THE COURT:  Well, I don't know how to address

18   that, sir.  It's not before me.  I'm not aware of any

19   other charges.

20        There are no cases or other charges pending;

21   is there?

22     MS. JACKSON:  At this point in time, Judge, no.

23     THE COURT:  All right.  So how much time do you

24   need to consult with Mr. Nelson?

1      MR. LYON:  Judge, if --

2          I think a short time; don't you think?

3      THE DEFENDANT:  Sure.  We can handle this in a

4  ten-minute succinct conversation.

5      THE COURT:  Do you want later this week, come back

6  Friday?

7      MR. LYON:  Thursday.

8      THE DEFENDANT:  And for the record, I don't have a

9  problem waiting until after Christmas.  I like the meal

10  there.

11      THE COURT:  You like the meal.

12      THE DEFENDANT:  Absolutely, just like grandma's.

13      THE COURT:  It's up to you.  What date do you

14  want?

15      MR. LYON:  Well, Judge, are you here the week

16  between Christmas and New Year's?

17      THE COURT:  I'm here all the way up until

18  Christmas Eve.

19      MR. LYON:  But I'm saying after Christmas, the

20  week between.

21      THE COURT:  I'm not taking any vacation.

22      MR. LYON:  Up to New Year's Eve, you mean?

23      THE COURT:  Yeah, both.  I'll be here Christmas

24  Eve and New Year's Eve.

1    MR. LYON:  Because I was thinking --

2    THE COURT:  I would like to get out early on

3  Christmas Eve, but I will be here.

4    MR. LYON:  He wants to eat the Christmas dinner,

5  so I thought the 28th or 29th.

6    THE COURT:  Okay.  12/28, 8:30, for status.

7    THE DEFENDANT:  Judge, can I bring up one last

8  thing, please?

9    THE COURT:  Go ahead.

10         Again, I admonish you --

11    THE DEFENDANT:  I'll try and be careful of what I

12  say, so that it doesn't get used against me.

13         My mail at the -- when I send you stuff, it's

14  usually -- and there has never been anything directly

15  trying to get to sway you one way or the other; but

16  they are tearing open my mail, and if you look at this

17  envelope right here, I have got two pieces of legal

18  mail, that are clearly identified as legal mail, and

19  they tore them open.

20         They're refusing to send my mail out, and

21  when I send stuff to the Clerk of the Court, they are

22  not returning Clerk of the Court, file stamped copies

23  to me.

24    THE COURT:  That's something you should discuss

1    with Mr. --

2         THE DEFENDANT:  So they are having the legal

3    process to the fact that there is no legal process.

4         THE COURT:  Understand this.

5              Right now, you are not acting as your own

6    attorney.  You have an attorney, okay, and that's the

7    party with whom you should go through with any legal

8    process or motions, and I would frankly -- and I'm sure

9    your counsel might address it, as well -- advise you

10   against writing these statements which could be used

11   against you.

12             Every time --

13        THE DEFENDANT:  Well, it's all going to come

14   down -- because these people are free with other

15   people's money.  This could have been worked out a

16   while ago.

17        THE COURT:  I don't know that.

18        THE DEFENDANT:  We are going to take it to a jury

19   trial.  I'm not taking any cop-outs on this.

20        THE COURT:  That's your right and that's what

21   we'll do.

22             I would like to get to that sooner rather

23   than later; okay?

24        THE DEFENDANT:  I hear you.  Me, too.

1    THE COURT:  See you back here December 28th.

2    MR. LYON:  Judge, I just want to say, for the

3  record -- and I have said it before, but I wanted to

4  say it again to Mr. Nelson now, that writing, "legal

5  mail," on an envelope means something, if it's

6  addressed and sent to me.

7         I am the one with the privilege, and the jail

8  is not to intercept mail -- privileged mail sent to me;

9  but if he sends something to you or to the clerk, that

10  doesn't have the same protection.

11    THE COURT:  He's right.

12    THE DEFENDANT:  Really?

13         So if I send something to Attorney Megan

14  Kelly, from Fox News, or Judge Andrew Napolitano,

15  that's not considered legal?

16    THE COURT:  They are not your attorney.  They may

17  be lawyers --

18         Just because somebody is a lawyer, doesn't

19  make them your lawyer or create the attorney/client

20  relationship, which is what he's alluding to.

21         All right.  Okay.

22    THE DEFENDANT:  I guess, everything is slanted in

23  you guys' favor.

24    THE COURT:  I don't know that anything is slanted

1    in my favor.  Everything -- the rules are there to

2    apply to everyone, so --

3         THE DEFENDANT:  Well, I'm writing a letter here to

4    the Attorney General of the United States, Loretta

5    Lynch.

6              Would anybody like copies of it, so that the

7    jail doesn't have to rip it open?

8         THE COURT:  Why don't you talk to your attorney

9    before you send it, and then if you still want to send

10   it, you have that right to send it, if that's what you

11   want.

12        THE DEFENDANT:  All right.  Thank you for your

13   time.

14        THE COURT:  Thank you.

15                  (Whereupon the hearing in the

16                  above-entitled matter was adjourned to

17                  December 28, 2015.)

18

19

20

21

22

23

24

18

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT

DU PAGE COUNTY, ILLINOIS



CHERYL ANN BARONE, do hereby certify that the foregoing Report of Proceedings, consisting of Pages 1 to 18, inclusive, was reported in shorthand by me, and the said Report of Proceedings is a true, correct and complete transcript of my shorthand notes so taken at the time and place hereinabove set forth.



*Cheryl Ann Barone*

Official Court Reporter
Eighteenth Judicial Circuit of Illinois
DuPage County
C.S.R. License No. 084-001503